IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SANTANA GAONA,                    §
TDCJ No. 1994412,                 §
                                  §
          Petitioner,             §
                                  §
V.                                §        No. 3:18-cv-1040-M-BN
                                  §
DIRECTOR, TDCJ-CID,               §
                                  §
          Respondent.             §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

"A jury convicted [Petitioner] Santana Gaona of murder and sentenced him to fifty years in prison." *Gaona v. State*, 498 S.W.3d 706, 707 (Tex. App. – Dallas 2016, pet. ref'd), *aff'g State v. Gaona*, No. F11-61227-V (292nd Jud. Dist. Ct., Dallas Cnty., Tex. Apr. 16, 2015). After his criminal judgment was affirmed on direct appeal, the Texas Court of Criminal Appeals ("CCA") refused Gaona's petition for discretionary review, *see Gaona v. State*, PD-0906-16 (Tex. Crim. App. Nov. 2, 2016). And the CCA denied his state habeas application without written order. *See Ex parte Gaona*, WR-82,092-02 (Tex. Crim. App. Feb. 14, 2018).

Gaona then filed a *pro se* 28 U.S.C. § 2254 habeas petition [Dkt. Nos. 3 & 4] on April 16, 2018, the date on which he certifies that he placed the petition in the prison mailing system,[1] *see* Dkt. No. 3 at 10. He raises for federal habeas review (1) that he

---

[1] *See* RULE 3(d), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm

was denied his right to a speedy trial, (2) that he was in custody for one hour before receiving *Miranda* warnings, and (3) that his trial counsel was constitutionally ineffective. His case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn. The State responded to the Gaona's habeas application. *See* Dkt. No. 15. And Gaona filed a reply brief. *See* Dkt. No. 16.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny federal habeas relief.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable

---

that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2244(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its

decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 970 F.3d 566, 573 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* at 573-74 (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists

could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no

further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 970 F.3d at 575.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246

(5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

I.   Gaona has not shown that either the CCA's adjudication of his speedy-trial claim or its adjudication of his *Miranda*-warnings claim was unreasonable.

Gaona moved to dismiss the indictment based on a speedy-trial violation, and, after conducting an evidentiary hearing, the trial court denied his motion. *See, e.g.*, Dkt. Nos. 13-5 & 13-6. But Gaona failed to raise either a speedy-trial claim or his *Miranda*-warnings claim on direct appeal, and, when he raised them on state habeas review, the State responded that Gaona procedurally defaulted both grounds by not raising them on direct appeal. *See* Dkt. No. 13-23 at 117-18. The State's answer was forwarded to the CCA as part of the record that it reviewed before denying Gaona's

state habeas application without comment.

While *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996), *clarified on reh'g* (Feb. 4, 1998) – "which bars consideration of claims that could have been but were not raised on direct appeal – is 'an adequate state ground capable of barring federal habeas review,'" *Murphy v. Davis*, 737 F. App'x 693, 702 (5th Cir. 2018) (per curiam) (quoting *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005)), it does not appear that the CCA "clearly and expressly rests its judgment on [a] procedural default," *Goodwin v. Collins*, 910 F.2d 185, 187 (5th Cir. 1990) (per curiam) ("The Supreme Court has instructed that the mere existence of a basis for a state procedural bar is not talismanic. Rather, it must be apparent that the state court 'actually … relied on the procedural bar as an independent basis for its disposition of the case.'" (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985))).[2] And Respondent does not raise procedural default as to these claims. So the Court should examine both claims on their merits through the deferential lens of AEDPA.

## A.     Speedy Trial Violation

"The Sixth Amendment guarantees a defendant 'the right to a speedy and public trial.'" *Leachman v. Stephens*, 581 F. App'x 390, 402 (5th Cir. 2014) (quoting U.S. Const. amend. VI). This right "applies to the states via incorporation by the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Divers v. Cain*, 698 F.3d

---

[2] *Cf. Davis v. Craig*, 66 F.3d 319, 1995 WL 534730, at *7 (5th Cir. July 25, 1995) ("Because the Texas Court of Criminal Appeals summarily denied both Davis' petition for direct review and Davis' single state habeas petition without issuing findings of fact or a written opinion, the Texas Court of Appeals issued the last reasoned opinion by a state court." (citing *Goodwin*)).

211, 215 (5th Cir. 2012)). And whether this right has been violated is "a mixed question of law and fact," which in the current context – federal habeas review of the state court's rejection of a speedy-trial claim – triggers "the deferential standard of 28 U.S.C. § 2254(d)(1)." *Amos v. Thornton*, 646 F.3d 199, 204 (5th Cir. 2011) (per curiam) (footnotes omitted). "Accordingly, [a state prisoner] is entitled to relief only if the state court's rejection of his speedy-trial claim resulted in a decision that was contrary to, or involved an objectively unreasonable application of, clearly established federal law as articulated in the decisions of the Supreme Court." *Id.* (footnote omitted).

> "Very few petitioners" can make the requisite showing, and due to the somewhat indeterminate and fact-intensive nature of the speedy trial right, [a federal court's] "always-substantial deference is at an apex." In resolving speedy trial issues, [the Court should] consider: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant." These factors are guides that require a delicate balancing.

*Divers*, 698 F.3d at 217 (quoting *Amos*, 646 F.3d at 204-05, 205; citation omitted); *see also Speer v. Lumpkin*, ___ F. App'x ___, No. 13-70001, 2020 WL 4778227, at *3 (5th Cir. Aug. 17, 2020) ("Because [the speedy trial] right is 'amorphous,' 'impreci[se],' 'necessarily relative,' and 'slippery,' the Supreme Court established 'a balancing test, in which the conduct of both the prosecution and the defendant are weighed.' Relevant factors include the length of the delay, the reason for it, the defendant's diligence in asserting the right, and whether the delay prejudiced the defendant." (quoting *Barker v. Wingo*, 407 U.S. 514, 522, 529-30 (1972), then citing *Vermont v. Brillon*, 556 U.S. 81, 90 (2009))).

Prior to trial, the state court, invoking the *Barker* factors, denied Gaona's

speedy trial motion based on the testimony it heard. *See* Dkt. No. 13-6 at 33. Certainly, the delay from indictment to the start of his trial – of almost 3.5 years – was not insubstantial and, as Respondent concedes, weighs in Gaona's favor. *See* Dkt. No. 15 at 15. But Gaona fails to allege that the prosecution deliberately delayed his trial to disadvantage his defense, and the state court record instead reflects that Gaona's hiring new counsel and then firing counsel contributed, substantially, to the delay. *See, e.g.*, Dkt. No. 13-6 at 31-32.

While Gaona did assert his speedy trial right through a Motion to Dismiss Prosecution filed September 6, 2013 – some 22 months after his arrest – Gaona's delay in asserting the right weighs against him. *See, e.g.*, *Speer*, 2020 WL 4778227, at *4 ("[T]he state court correctly recognized that the third factor – his timeliness in asserting the right – weighs strongly against him. Speer waited nearly 22 months to raise a speedy trial concern, well beyond the delay in other cases where we have found this factor to weigh against the defendant." (citations and footnote omitted)).

And the United States Court of Appeals for the Fifth Circuit has "long warned that a motion to dismiss, as opposed to a request for a prompt trial, is 'not a valid demand for a speedy trial.'" *Id.* (quoting *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994); citing *United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009) ("A motion to dismiss the indictment, particularly when, as here, it is filed over two years after the indictment, is not evidence of a [desire to be tried promptly.]")).

Finally, Gaona failed to articulate that his case was substantially prejudiced by delays. *See, e.g.*, Dkt. No. 13-6 at 9-10 (testifying that his father-in-law died before

Gaona could go to trial but that he would have only testified as a character witness); *see also Speer*, 2020 WL 4778227, at *4 (explaining that, in considering whether a defense was prejudiced because a delay made a witness unavailable, "[i]t is the [defendant's] burden to explain how that witness's testimony 'would have materially aided his case'" (quoting *Turner v. Estelle*, 515 F.2d 853, 860 (5th Cir. 1975))); *id.* ("The possibility of prejudice is not enough, *United States v. Loud Hawk*, 474 U.S. 302, 315, (1986), especially when [petitioner] has the AEDPA burden of showing that the state court could not have reasonably ruled against him.").

In sum, Gaona has not shown that the CCA's denial of his speedy trial claim was unreasonable.

### B.    *Miranda* Warnings Violation

Gaona asserts that he was held in custody for one hour until he was transported to the Dallas police station and given his *Miranda* warnings in Spanish. *See* Dkt. No. 3 at 7. He further explains that he "was subjected to custodial interrogation, without being given his complete" *Miranda* warnings, but he fails to identify a statement that he made prior to receiving these warnings. Dkt. No. 4 at 26-28. It was therefore not unreasonable for the CCA to deny this conclusory claim. *See, e.g.*, *Tuckness v. Davis*, No. 2:16-cv-188-D, 2019 WL 1930038, at *4 (N.D. Tex. Mar. 22, 2019) (A "conclusory statement alone is insufficient for petitioner to prove the threshold standard to overcome the AEDPA bar and obtain federal habeas relief." (footnote omitted)), *rec. adopted*, 2019 WL 1923851 (N.D. Tex. Apr. 30, 2019).

II.    Gaona has not shown that the CCA's adjudication of the IAC claims is <u>underline</u>.

Gaona raises two IAC claims: first that his counsel was constitutionally ineffective for not preparing a defense as to evidence being illegally obtained. *See* Dkt. No. 3 at 6; Dkt. No. 4 at 3-11. But this claim was not made in the state proceedings. Its factual and legal basis were therefore not "fairly presented to the" CCA, as the highest available state court, for review, which means that Gaona has failed to properly exhaust state court remedies as to them. *Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) ("'The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court' so that a state court has had a 'fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional claim.'" (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004))); *see* 28 U.S.C. § 2254(b)(1)(A).

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows

that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. But these claims are procedurally barred, because Gaona has not shown that the claim would be allowed in a subsequent habeas proceeding in state court under Texas law. Nor has he asserted the "fundamental miscarriage of justice" exception to procedural bar.

The Court should therefore deny this IAC ground as procedurally barred.

Gaona did assert in the state proceedings that his counsel failed to secure testimony from Gaona's brother-in-law. *See* Dkt. No. 3 at 7; Dkt. No. 4 at 29-45.

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a

state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-

12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in

tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland. See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[3]

Considering Gaona's IAC claim based on his counsel's failure to obtain testimony from Gaona's brother-in-law,

> "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." "To prevail ... the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed

---

[3] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

testimony, and show that the testimony would have been favorable to a particular defense."

*Nelson v. Davis*, 952 F.3d 651, 669 (5th Cir. 2020) (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)).

Gaona indicates that his brother-in-law was available to testify, would have done so, and would have testified that the victim threatened Gaona almost two months prior to the shooting. *See* Dkt. No. 4 at 29. But these assertions are not set out in an affidavit from his brother-in-law, as required to move this claim beyond mere speculation. *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) ("Sayre has never provided any court with affidavits (or similar matter) from any of the unidentified favorable witnesses suggesting what they would have testified to. It is clear that Sayre's conclusory speculation about the effect of the unidentified favorable witness' testimony falls far short of the prima facie showing of prejudice necessary for the evidentiary hearing Sayre requests." (citing *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983)).

Gaona has therefore now shown that the CCA's denial of this IAC claim amounts to either "an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)); *see also Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) ("[A]lthough Evans did not provide affidavits from the alleged eyewitness or indicate what testimony the eyewitness would give, the district court 'presume[d] that the testimony would be favorable to the petitioner.' However, complaints of uncalled witnesses are not favored in federal habeas corpus review because

allegations of what the witness would have testified are largely speculative. The district court engaged in this type of speculation. Therefore, we cannot conclude that counsel's failure to call the alleged eyewitness was ineffective assistance." (citation omitted)).

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 15, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE